## NORMAN v. UNITED STATES.

### No. 7953.

Circuit Court of Appeals, Sixth Circuit.

Jan. 12, 1939.

906

L. E. Gwinn and Edgar Webster, both of Memphis, Tenn., for appellant.

R. G. Draper, of Memphis, Tenn. (William McClanahan and R. G. Draper, both of Memphis, Tenn., on the brief), for the United States.

Before SIMONS, ALLEN, and HAMILTON, Circuit Judges.

SIMONS, Circuit Judge.

The appellant having been convicted and sentenced under seven counts of an indictment charging violation of § 215 of the Criminal Code, T. 18, U.S.C., § 338, 18 U.S.C.A. § 338, the Mail Fraud Statute, and under three counts charging violation of § 1725, sub-section (g), T. 12, U.S.C.A., the National Housing Act, complains of the fairness of the trial and asserts an abuse of discretion in the denial below of her motion for new trial.

The alleged scheme or artifice to defraud set up in the indictment was in substance the organization of the Superior Building & Loan Association under the laws of Tennessee, the sale of shares and the receipt of deposits therein upon representations that deposits were guaranteed by the Government, that the Association was protected from bankruptcy, that depositors were guaranteed an 8% return on their investments, and that deposits would be invested in first mortgages on real estate, all with purpose and intent that funds and properties acquired by the Association would be converted to the use of the appellant and her husband, and with knowledge that there was no possibility of the Association yielding the guaranteed return and that the representations were false.

Although the errors assigned and those which, though unassigned, are now urged upon us in support of the view that we consider broadly the state of the record, are numerous, chief emphasis is laid upon two, one growing out of the fact that counsel who represented the defendant at the trial gave her erroneous legal advice and the other grounded upon the failure of the court to instruct the jury upon the necessity of a finding of fraudulent intent by the appellant in her alleged representations.

The appellant did not testify at the trial. In affidavits supporting her motion for new trial it is averred that she desired to testify, but was dissuaded by her counsel, who advised her that if she took the stand the Government would present proof of an indictment then pending against her for arson. It was also set forth that she had called witnesses who were present at the trial ready to testify to her reputation for truth and veracity and as a law abiding person. They were not sworn because she was advised by her counsel that their evidence would not be received unless she herself testified and that if received it would put her reputation in issue and proof might be introduced as to her pending indictment. Deprived of her own testimony and that of her reputation witnesses, it is now urged, as it was in hearing upon the motion, that the appellant was divested of her right to a fair and impartial trial upon the facts in issue, that while this was not error committed at the trial, yet the court being apprised of the circumstances by the motion, abused its discretion in denying it.

The jury trial consumed six full days. The defendant was represented by an able and experienced attorney of her own choosing. He had been an Assistant United States Attorney and had had wide experience both in the prosecution and in the defense of those charged with crime. Of the numerous reasons that induced him to dissuade the appellant from giving evidence, the court considered many founded upon good judgment. Appellant's present counsel concede that he made an able presentation of her defense, and the court and adversary counsel agree. We find no abuse of discretion in the denial of the motion for new trial. There are state decisions which hold that a new trial in a criminal case should be granted where the negligence of counsel is great or his mistake of law so serious as to deprive the defendant of the benefit of important and material evidence which might reasonably cause the jury to return a different verdict. People v. Schulman, 299 Ill. 125, 132 N.E. 530, 24 A.L.R. 1022; People v. Nitti, 312 Ill. 73, 143 N.E. 448; State v. Gleeman, 170 Minn. 197, 212 N.W. 203; State v. Gunter, 30 La.Ann. 536. They do not reach this case. In any event we are un-

willing to open the door of opportunity to less ethical counsel than those here concerned, through which by the simple expedient of announcing an erroneous rule of law their clients failing exoneration by one jury may again enter the trial court for a second chance before another.

■ The court failed to charge the jury specifically that criminal intent is a necessary element of the crime condemned by the statute, and charged in the indictment. It was not asked to do so nor was there objection recorded to the charge as given. This failure is not assigned as error, and was not a ground upon which the motion for new trial was based. Except for counsel's insistent urging of unfairness, this should dispose of the matter. We have, however, given full consideration to the general instructions of the court. The indictment, except for repetitive matter, was read to the jury. While we do not in general commend this practice nor consider it as contributing much to the clarification of factual issues to be decided, yet the present indictment as read is replete with allegations of guilty knowledge and fraudulent intent, and the court charged correctly and fully as to the burden of proof. It may well be that repeated allegations of fraudulent intent satisfied trial counsel that the subject was adequately covered. We do not find in this respect any error upon the record so palpable and prejudicial as to warrant reversal.

Of errors otherwise assigned or urged little need be said. Some license was indulged in and permitted in cross-examination in reference to matters extraneous to the issues, not readily understood in view of our admonition in Pierce v. United States, 6 Cir., 86 F.2d 949. We are unable to say, however, upon consideration of the whole record and the absence of timely objection that it resulted in prejudice. The evidence of a fraudulent scheme was substantial and convincing. The nice distinctions between truth and falsity made with respect to many of the alleged misrepresentations proclaim design rather than inadvertence, and the stratagems employed to prolong the existence of the Association under State attack may have strongly persuaded the jury of the fraudulent character of the enterprise.

We cite but a few of the alleged misrepresentations. Depositors were told: "The Federal laws protect your Association from bankruptcy." While the Bankruptcy Act § 4, as amended, February 11th, 1932, 47 Stat. 47, 11 U.S.C.A. § 22, denied to building and loan associations the benefits of voluntary adjudication as bankrupts and prohibited their involuntary adjudication, they were not enfolded in the mantle of Federal protection against the usual business vicissitudes of investment companies as the statement was meant to and did imply. One of the letters sent through the mails informed prospective depositors that Congress had adjourned June 18th, 1934, after passing one of five major bills which guaranteed deposits in building and loan associations up to $5,000.00 for each individual account. The appellant's Association had not been federalized. The statement as to the passage of the law was true. The implication carried by it was undoubtedly false and calculated to deceive.

■ We give little consideration to analysis of the record made in an effort to show that depositors were not deceived. The offense condemned by the statute is not conditioned upon the success of the scheme or artifice to defraud. It is complete when the scheme has been devised and when in pursuance of it the mails have been used. Nor are we persuaded of error in the reiteration during the trial of the fact that many of the depositors were widows and orphans. If one sets out to victimize persons least able to guard themselves against fraudulent schemes he may not with justice complain if their status is disclosed, and the lack of guile on the part of those generally solicited may itself point with persuasion to the fraudulent character of the artifice. Bogy v. United States, 6 Cir., 96 F.2d 734, 741. We find no other assignments of error meriting discussion.

The judgment below is affirmed.